IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID MCMILLAN, *et al.*

    *Plaintiffs*,

v.

ERIE INSURANCE COMPANY,

    *Defendant*.

Civil Action No. ELH-25-2444

**MEMORANDUM OPINION**

Plaintiffs David McMillan and his company, Harford Custom Coach ("Harford"), filed a declaratory judgment action in the Circuit Court for Harford County against their insurer, Erie Insurance Company ("Erie"), pursuant to Md. Code (2020 Repl. Vol., 2024 Supp.), § 3-406 of the Courts and Judicial Proceedings Article ("C.J."). ECF 5 ("Complaint"). On the basis of diversity jurisdiction, Erie removed the case to this Court, pursuant to 28 U.S.C. § 1332(a). ECF 1 (Notice of Removal); ECF 8 (Supplement to Notice of Removal), ¶ 2.[1]

The suit is rooted in Erie's decision to deny a claim lodged against plaintiffs by way of a demand letter, with respect to an alleged sexual assault committed by McMillan at his place of business. ECF 5, ¶ 6; ECF 4-1 at 3. Although no lawsuit has yet been filed against plaintiffs, they ask the Court to require Erie to defend and indemnify them.

Defendant has moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF 4), supported by a memorandum of law. ECF 4-1 (collectively, the "Motion"). Erie contends that "McMillan is asking the court to issue an improper advisory opinion" on a matter that is not ripe.

---

[1] In the Complaint, plaintiffs allege that Erie is a Maryland corporation, with its principal place of business in Baltimore. ECF 5, ¶ 3. But, Erie asserts that it is a Pennsylvania corporation with its principal office in Pennsylvania. ECF 8, ¶ 5. Plaintiffs subsequently conceded diversity. ECF 10, ¶ 3.

ECF 4-1 at 1.  In their opposition (ECF 16), plaintiffs contend that the matter is ripe and, in any event, that ripeness does not apply.  Erie replied.  ECF 17.

Plaintiffs have moved to remand the case.  ECF 10 ("Remand Motion).  They contend that the "case does not provably exceed the $75,000.00 jurisdictional limit."  *Id.* ¶ 3.  In their view, it "would be rank speculation" to ascertain the damages at this juncture.  *Id.* ¶ 5.  Defendant opposes the Remand Motion.  ECF 13.  Erie points out that the demand letter (ECF 13-1) seeks $250,000.  *Id.* at 3.  Moreover, Erie asserts that the policy limits are $1.5 million.  ECF 13 at 1.  Plaintiffs did not reply.  *See* Docket.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion, without prejudice to plaintiffs' right to refile the suit at the appropriate time.  And, I shall deny the Remand Motion, as moot.

## I. Factual Background

Erie issued "several policies of insurance" to McMillan and Harford, "a company in which McMillian is an officer."  ECF 5 at 1.  "The policies covered many potential causes of action, including general liability, workers' compensation, as well as other matters, including an umbrella policy."  *Id.*  According to the Complaint, Erie agreed, "subject to various terms and conditions [in the insurance policy], to defend, pay, and indemnify the Plaintiffs for all damages and expenses that the Plaintiffs are liable to pay, and do pay, as a result of (1) liability and other claims; and (2) costs and expenses reasonably incurred and paid by Plaintiffs in defense against any insured liability."  *Id.* ¶ 5.

Plaintiffs assert that an individual who was "conducting business" at Harford has notified plaintiffs that "she was the subject of multiple torts while present at the business . . . ."  *Id.* at ¶ 7.  I shall refer to this individual as the "Claimant", "Jane Doe", or "Doe."  The incident allegedly

occurred on September 27, 2024.  ECF 10 at 1.  The demand letter was sent on March 20, 2025.

ECF 13-1.; *id.* ¶ 6.  Doe seeks compensatory damages in excess of $100,000.  ECF 5, ¶ 6.  Erie

denied the claim.  *Id.* ¶ 8.

This suit followed.  ECF 5.  In the suit, plaintiffs seek a declaration stating, in part, *id.* at

5:

> That this Court find and declare that Defendant is under a duty to indemnify
> Plaintiffs, to provide a defense, and to pay against any sums which Defendant may
> incur and pay by reason of the alleged incident occurring at Harford Custom Coach
> on September 27, 2024.
>
> Additional facts are included, *infra.*

## II.  Legal Principles

### A.  Jurisdiction

Plaintiff seeks declaratory relief requiring Erie to defend and indemnify Harford from "(1)

liability and other claims; and (2) costs and expenses reasonably incurred and paid by Plaintiffs in

defense against liability."  ECF 5, ¶ 5.  The Federal Declaratory Judgment Act (the "Act"), 28

U.S.C. § 2201(a), provides:[2]

> In a case of actual controversy within its jurisdiction...any court of the
> United States, upon the filing of an appropriate pleading, may declare the rights
> and other legal relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought. Any such declaration shall
> have the force and effect of a final judgment or decree and shall be reviewable
> as such.
>
> The Act "is remedial only and neither extends federal courts' jurisdiction nor creates any

substantive rights."  *CGM, LLC v. BellSouth Telcoms., Inc.*, 664 F.3d 46, 55 (4th Cir.

2011) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)); *see

also Profiles, Inc. v. Bank of America Corp.*, 453 F. Supp. 3d 742, 752 (D. Md.

---

[2] As discussed, *infra*, plaintiffs rely on C.J. § 3-401.  *See* ECF 16-1 at 2.  But, when a State court declaratory action is removed to federal court, the federal statute applies.  *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3 255, 261 n.3 (4th Cir. 2013).

2020) ("The Declaratory Judgment Act 'provides a remedy in cases otherwise in the Court's jurisdiction; it does not create an independent cause of action.'") (quoting *Elec. Motor and Contracting Co., Inc. v. Travelers Indemnity Co. of Am.*, 235 F. Supp. 3d 781, 793 (E.D. Va. 2017)). Notably, "'[a] request for declaratory relief is barred to the same extent that the claim for substantive relief on which it is based would be barred.'" *CGM, LLC*, 664 F.3d at 55–56 (alteration in original) (citation omitted).

The statute's "permissive language has long been interpreted to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). Thus, 28 U.S.C. § 2201(a) "'merely permits' federal courts to hear those cases rather than granting litigants a right to judgment." *Medical Mutual Ins. Co. of N.C. v. Littau*a, 35 F.4th 205, 208 (4th Cir. 2022) (quoting *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201–02 (4th Cir. 2019)).

Erie seeks dismissal of the Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). ECF 4 at 1. Defendant insists that the case is not ripe because it does not present a case or controversy. ECF 4-1 at 3–6. Therefore, Erie argues that the Court lacks jurisdiction over the claim. *Id.* Defendant's argument under Rule 12(b)(6) implicates Fed. R. Civ. P. 12(b)(1), concerning subject matter jurisdiction. But, Erie has not moved to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

"[B]efore a federal court can decide the merits of a claim, the claim must invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). In *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014), the Fourth Circuit observed: "Fundamental to our federal system is the

4

principle that '[f]ederal courts are courts of limited jurisdiction.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)) (alteration in *Hanna*).

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); s*ee also The Piney Run Preservation Ass'n v. Cty. Comm'rs Of Carroll Cty.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge or a factual challenge. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Hutton v. Nat'l Bd. of Examiners Inc.*, 892 F.3d 613, 620-21 (4th Cir. 2018); *Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013).

In a facial challenge, "the defendant must show that a complaint fails to allege facts upon which subject-matter jurisdiction can be predicated." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)); *see also Kerns*, 585 F.3d at 192. Alternatively, in a factual challenge, "the defendant maintains that the jurisdictional allegations of the complaint are not true." *Hutton*, 892 F.3d at 621 n.7 (citing *Beck*, 848 F.3d at 270). In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't Of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also Beck*, 848 F.3d at 270; *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 333 (4th Cir. 2014); *Evans*, 166 F.3d at 647. Erie appears to lodge a facial challenge to subject matter jurisdiction.

Under 28 U.S.C. § 2201, the plaintiff must establish the existence of a dispute that is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that [is] 'real and substantial[.]'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127

(2007) (citation omitted).  As discussed below, this is necessary in order to satisfy the case or controversy requirement of Article III of the Constitution.  *Id.* at 126–27.  Therefore, for a declaratory judgment to issue, there must be a dispute that "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." *Aetna Life Ins. Co. of Harford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937); *see also Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

It is a bedrock principle that Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see Murthy v. Missouri*, 603 U.S. 43, 56 (2024) ("Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"); *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295 (2022) ("The Constitution limits federal courts to deciding 'Cases' and 'Controversies.'") (quoting Art. III, § 2); *Carney v. Adams*, 592 U.S. 53, 58 (2020) (recognizing that Article III requires "a genuine, live dispute between adverse parties . . ."); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'"); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (It is fundamental that Article III of the Federal Constitution confines the federal courts to adjudicating "actual, ongoing cases or controversies."); *Opiotennione v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) ("Article III of the constitution limits the judicial power of the United States to 'Cases' and 'Controversies.'"); *Frazier v. Prince George's Cnty, Maryland*, 140 F.4th 556, 562 (4th Cir. 2025) ("By using the words cases and controversies, Article III limits the business of federal courts to questions presented in an adversary context.")(cleaned up); *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023) (same).  "Indeed, 'no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional

limitation of federal-court jurisdiction to actual cases or controversies.'" *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 343 (2016)).

"Article III's restriction of the judicial power to 'Cases' and 'Controversies' is properly understood to mean 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021) (citations omitted). Therefore, during the pendency of a case, an actual controversy must exist. *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974); *Int'l Bhd. of Teamsters, Local Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 234 (4th Cir. 2018); *Williams v. Ozming*, 716 F.3d 801, 808 (2013). Courts "do not adjudicate hypothetical or abstract disputes." *TransUnion LLC*, 594 U.S. at 423. Nor do courts "exercise general legal oversight" of other government branches, *id.*, or render "advisory opinions." *Id.* at 424. Simply put, in the absence of a case or controversy, "the courts have no business deciding [the case] . . . ." *DaimlerChrysler Corp.*, 547 U.S. at 341. And, in the absence of a case or controversy, "the court's subject matter jurisdiction ceases to exist . . . ." *S.C. Coastal Conservation League v. U.S. Army Corps. of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015); *see Gardner v. GMAC, Inc.*, 796 F.3d 390, 395 (4th Cir. 2015) (same).

A "case or controversy exists only when at least one plaintiff" establishes standing to sue. *Murthy*, 603 U.S. at 57. Thus, "the doctrine of standing [serves] as a means to implement" the case or controversy requirement. *Laufer*, 60 F.4th at 161; *see TransUnion LLC*, 594 U.S. at 423 ("For there to be a case or controversy under Article III, the plaintiff must have . . . standing."); *Spokeo, Inc.*, 578 U.S. at 338 ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."); *Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("One element of the case-or-controversy requirement" is that a plaintiff must establish standing to sue.).

"Two related doctrines . . . each originating in the case-or-controversy requirement of Article III . . . underlie [the] determination [of whether a case is justiciable]. First, a plaintiff must demonstrate standing . . . . Second, the case must be 'ripe.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (internal citations omitted); *see Raines*, 521 U.S. at 818. The matter of standing is a "threshold jurisdictional question." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017); *see also Albert v. Lierman*, __ F.3d__, 2025 WL 2608433, at *3 (4th Cir. Sept. 10, 2025) ("[S]tanding and ripeness are threshold jurisdictional issues to be decided before a court considers the merits of a case[.]"); *N. Virginia Hemp & Agric., LLC v. Virginia*, 125 F.4th 472, 488 (4th Cir. 2025) (describing standing as the "threshold question").

To establish Article III standing, a plaintiff must satisfy three elements. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). They are, *id.* (internal quotation marks and citations omitted):

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

The cases are legion with regard to these elements. *See*, *e.g.*, *Food and Drug Admin. v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 380 (2024); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023); *Cruz*, 596 U.S. at 296; *Uzuegbunam*, 592 U.S. at 285; *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020); *Spokeo*, 578 U.S. at 338; *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 168 (2014); *Sierra Club v. U.S. Dep't of the Interior*, 899 F.3d 260, 284 (4th Cir. 2018) ; *see also  Holmes v. Elephant Ins. Co.*, __ F.3d__, 2025 WL 2907615, at *2 (4th Cir. Oct. 14, 2025); *Delmarva Fisheries Ass'n, Inc. v. Atl.*

*States Marine Fisheries Comm'n*, 127 F.4th 509, 515 (4th Cir. 2025); *Fernandez v. RentGrow, Inc.*, 116 F.4th 288, 294 (4th Cir. 2024); *Laufer*, 60 F.4th at 161; *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 200 (4th Cir. 2020). At bottom, the standing requirement ensures that the plaintiff has "'a personal stake in the outcome of the controversy.'" *Gill v. Whitford*, 585 U.S. 48, 65 (2018) (citation omitted); *see Deal v. Mercer Cty. Bd. of Educ.*, 911 F.3d 183, 187 (4th Cir. 2018) ( "The standing inquiry asks whether a plaintiff ha[s] the requisite stake in the outcome of a case . . . .")

An injury in fact is the "'[f]irst and foremost' of standing's three elements." *Spokeo*, 578 U.S. at 338 (alteration in *Spokeo*; citation omitted); *see Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010); *Opiotennione*, 130 F.4th at 153; *see also Griffin v. Dep't of Labor Fed. Credit Union*, 912 F.3d 649, 653 (4th Cir. 2019) ("An injury in fact is an indispensable aspect of constitutional standing . . . ."). To satisfy the injury-in-fact requirement, the plaintiff must plausibly allege "an invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quotation marks and citation omitted); *see Maryland Shall Issue*, 971 F.3d at 210.

"Concreteness and particularity are two different requirements that each must be met." *Opiotennione*, 130 F.4th at 153. "[A]n injury is 'particularized' if it 'affect[s] the plaintiff in a personal and individual way.'" *Id.* (quoting *Spokeo, Inc.*, 578 U.S. at 339) (second alteration in *Opiotennione*); *see Food and Drug Admin.*, 602 U.S. at 381; *Holmes*, __ F.3d__ 2025 WL 2907615, at *3. A concrete injury is one that is "'real, and not abstract.'" *TransUnion LLC*, 594 U.S. at 417 (citation omitted); *see Food and Drug Admin.*, 602 U.S. at 381. "'[F]inancial harm is a classic and paradigmatic form of injury in fact.'" *Maryland Shall Issue, Inc.*, 971 F.3d at 210)

(citations omitted).    But, "[v]arious intangible harms can also be concrete." *TransUnion, LLC*, 594 U.S. at 425; *see Behr*, 953 F.3d at 252.

An injury in fact must also be actual or imminent. The concepts of actual, ongoing injury or imminent injury are "disjunctive." *Deal*, 911 F.3d at 189. Ongoing injuries are, "by definition, actual injuries for purposes of Article III standing." *Id.* The imminence requirement is a "'somewhat elastic concept.'" *Clapper*, 568 U.S. at 409 (citation omitted). But, "'it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes.'" *Id.* (citation omitted). Accordingly, an allegation of threatened injury is sufficient to establish standing only "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper*, 568 U.S. at 414 & n.5); *see South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019); *Beck v. McDonald*, 848 F.3d 262, 271 (4th Cir. 2017). An injury that "relies on a highly attenuated chain of possibilities" does not qualify as "certainly impending." *Clapper*, 568 U.S. at 410.

The second component of standing concerns traceability. This means that the injury in fact must be "fairly traceable to the challenged conduct of the defendant." *Md. Shall Issue*, 971 F.3d at 210. "For an injury to be traceable, 'there must be a causal connection between the injury and the conduct complained of' by the plaintiff." *Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 760 (4th Cir. 2018) (quoting *Lujan*, 504 U.S. at 560). However, "the defendant's conduct need not be the last link in the causal chain . . . .'" *Air Evac EMS, Inc.*, 910 F.3d at 760; *see also Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014) ("Proximate causation is not a requirement of Article III standing . . . ."). "[W]here the plaintiff suffers an injury that is 'produced by [the] determinative or coercive effect' of the defendant's conduct 'upon the action of

someone else,'" the traceability requirement is satisfied. *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand and Lansdowne, LLC*, 713 F.3d 187, 197 (4th Cir. 2013) (quoting *Bennett v. Spear*, 520 U.S. 154, 169 (1997)).

To satisfy the third element of standing, redressability, a plaintiff "'must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable [judicial] decision.'" *Deal*, 911 F.3d at 189 (quoting *Sierra Club*, 899 F.3d at 284). The "very essence" of the redressability requirement is that "[r]elief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court." *Steel Co.*, 523 U.S. at 107. But, the "burden imposed by this requirement is not onerous." *Deal*, 911 F.3d at 189. For example, plaintiffs "'need not show that a favorable decision will relieve [their] every injury.'" *Id.* (citation omitted). "Rather, plaintiffs 'need only show that they personally would benefit in a tangible way from the court's intervention.'" *Id.* (quoting *Sierra Club*, 899 F.3d at 284).

"To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (citation omitted). Notably, the "second and third standing requirements—causation and redressability—are often 'flip sides of the same coin.'" *Food & Drug Admin.*, 602 U.S. at 380–81 (quoting *Sprint Commc'ns Co. v. APCC Services, Inc.*, 554 U.S. 269, 288 (2008)). "If a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Food & Drug Admin.*, 602 U.S. at 380.

The "'case or controversy' constraint of Article III" also includes principles of ripeness, which "presents a 'threshold question [ ] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (citation omitted). Ripeness "'concerns the appropriate timing of judicial intervention.'" *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir.

2013) (quoting *Va. Soc'y for Human Life, Inc. v. FEC*, 263 F.3d 379, 389 (4th Cir. 2001)); *see Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 208 (4th Cir. 2022); *see also NAACP*, 382 F. Supp. 3d at 363 (noting that standing concerns who may sue, whereas ripeness pertains to when a party may sue).

Ripeness is an issue of subject matter jurisdiction.  *Sansotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013); *see Nat'l Ass'n for the Advancement of Colored People v. Bureau of the Census*, 382 F. Supp. 3d 349, 363 (D. Md. 2019) ("*NAACP*") (describing standing and ripeness as "overlapping facets" of subject matter jurisdiction).  The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . . ."  *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted).   Under the ripeness doctrine, the Court considers: "(1) [W]hether delayed review would cause hardship to the plaintiff; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented."  *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *see Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022).

Notably, a claim is not ripe for judicial review "'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Scoggins*, 718 F.3d at 270 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *see Sommerville v. Union Carbide Corp.*, 149 F.4th 408, 417 (4th Cir. 2025). In other words, "the ripeness requirement is designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements' . . . ." *Ohio Forestry Ass'n, Inc.*, 523 U.S. at 732–33 (citations

omitted); *see also Wild Virginia* 56 F.4th at 294; *Whitaker, 42* F.4th 208; *South Carolina*, 912 F.3d at 730; *NAACP*, 382 F. Supp. 3d at 370.

The doctrines of ripeness and standing are largely blurred in declaratory judgment actions.  *See* 13B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3532.5 (3d ed. 2018).  In *MedImmune,* 549 U.S. at 128 n.8, the Supreme Court recognized that "standing and ripeness boil down to the same question" of justiciability.  *Accord Susan B. Anthony List*, 573 U.S. at 157 n.5; *see South Carolina*, 912 F.3d at 730; *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006); *see also Capital Associated Indus., Inc. v. Stein*, 283 F. Supp. 3d 374, 380 (M.D.N.C. 2017) (characterizing discussion of standing and ripeness as "one involving 'standing'" in light of *MedImmune* and *Susan B. Anthony List*).  Both ripeness and standing "require that those seeking a court's intervention face some actual or threatened injury to establish a case or controversy." *Doe v. Duling*, 782 F.2d 1202, 1206 n.2 (4th Cir. 1986).

### B.  Choice of Law

The parties assume, without discussion, that Maryland law applies to this diversity action. In an action based upon diversity of citizenship, a federal court must apply the substantive law of the state in which it sits, including that state's choice of law rules.  *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).

In a contract claim, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract.  *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648-49 (2007); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *see also Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011).  "For choice-of-law purposes, a contract is

made where the last act necessary to make the contract binding occurs." *Konover Property Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

"Typically, '[t]he *locus contractus* of an insurance policy is the state in which the policy is delivered and the premiums are paid,'" *Porter Hayden*, 116 Md. App. at 673, 698 A.2d at 1200 (citation and some internal quotation marks omitted). This is because delivery of the policy and payment of the premium are ordinarily the last acts necessary to make an insurance policy binding. *See Aetna Cas. & Sur. Co. v. Souras,* 78 Md. App. 71, 77, 552 A.2d 908, 911 (1989).

Plaintiffs have not specifically identified any policy of insurance. *See* ECF 5. Nor is it clear that the policy was executed in Maryland. *See* ECF 5. "However, because the parties implicitly agree that Maryland law governs their claims, [the Court] need not inquire further into the choice-of-law questions." *Vanderhoof-Forschner v. McSweegan*, 215 F.3d 1323 (Table) at *2 n.2 (4th Cir. 2000) ((citing *American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.")). Accordingly, I shall apply the substantive law of Maryland.

### IV.  Discussion

### A.

Erie contends that plaintiffs' request for a declaratory judgment concerning its duty to defend and indemnify is "unripe" and would result in an improper advisory opinion. ECF 4-1 at 1, 3. According to Erie, the duty to defend cannot be considered until the Claimant files suit. ECF 4-1 at 5, 6. Defendant adds that "this is especially true when McMillan cannot even articulate in his complaint what McMillan thinks they will be sued for or identify what specific policy

McMillan thinks would cover it." *Id.*  Defendant emphasizes that "this analysis requires a specific non-theoretical complaint with actual allegations to compare to a policy." *Id.* at 6.  Without further information, argues Erie, it cannot analyze whether it will deny coverage or if it will shoulder the duty to defend. *Id.*

Plaintiffs counter that the action begins with the threat of litigation.  They assert, ECF 16-1 at 2: "The act of defending claims . . . does not begin on the day a complaint is dropped onto a client's doorstep . . . . [T]he expectation of a suit often begins from the day the alleged tort occurs." They add, *id.*: "It certainly occurs when counsel for the alleged injured party communicates with putative opposing counsel." *Id.*

According to plaintiffs, the issue of coverage is "squarely before the parties . . ." because the alleged tort victim has "reached out" to plaintiffs and their lawyers in an "attempt to negotiate a resolution of the alleged battery." *Id.*   Therefore, they maintain that Erie should undertake "the negotiation" because "the money is Erie's to offer." *Id.*

Further, plaintiffs contend that because the case was initially filed under the Maryland Uniform Declaratory Judgments Act, C.J. § 3-406, and not the Act, 28 U.S.C. § 2201, the ripeness analysis does not apply.  *See* ECF 16-1 at 2, 3.  Noting that Maryland "lack[s] the Cases and Controversies language of the Constitution," plaintiffs posit that Maryland courts "rarely" dismiss declaratory actions and do so "for being filed too late rather than too early." *Id.* at 3.[3]  In their view, the action "clearly falls within the generous ambit" of the Maryland statute. *Id.* at 4.

To be sure, the Complaint was filed pursuant to Md. Law, *i.e.*, C.J. § 3-406.  ECF 5, ¶ 2. But, in the Fourth Circuit, district courts must "treat a state court declaratory action that

---

[3] Plaintiffs cite, *inter alia*, *Christ v. Department*, 335 Md. 427, 435, 644 A.2d 34, 38 (1994), and *Coates v. Charles County Bd. Of Comm'rs*, 266 Md. App. 266, 338 A.3d 787 (2025), for support.  *See* ECF 16-1 at 3.  But, these cases do not support plaintiffs' position.

is removed as invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Harford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013); *see Jones v. Sears Roebuck & Co.,* 301 Fed. App. 276, 281 n. 12 (4th Cir.2008) (citing *Chapman v. Clarendon Nat'l Ins. Co.,* 299 F.Supp.2d 559, 562–63 (E.D.Va.2004) ("Although the State Complaint purported to invoke West Virginia's Declaratory Judgment Act, we apply the federal Declaratory Judgment Act in this proceeding.").  Accordingly, when cases brought under C.J. § 3-406 are removed to federal court, courts in the District of Maryland proceed under 28 U.S.C. § 2201.  *See First Nationwide Mortg. Corp. v. FISI Madison*, LLC, 219 F. Supp. 2d 669, 672 n.1 (D. Md. 2002) (substituting 28 U.S.C. § 2201 in place of C.J. § 3-406 ); *see, e.g., Howes v. SN Servicing Corp.*, CCB-20-670, 2021 WL 878354, at *3 (D. Md. Mar. 9, 2021*), amended on reconsideration*, CCB-20-670, 2022 WL 4554857 (D. Md. Sept. 29, 2022).

Therefore, I shall proceed with the analysis as if this action had been brought under the Act, 28 U.S.C. § 2201.

## B.

As noted, plaintiffs seek a declaration that Erie has a duty "to defend, pay, and indemnify the plaintiffs for all aspects for all damages and expenses that the Plaintiffs are liable to pay."  ECF 5, ¶ 5.  However, plaintiffs have not identified a particular insurance policy that allegedly applies, or the terms of a policy, a lawsuit that has been filed, or the claims in a lawsuit.

In Maryland, an insurer's "duty to defend is distinct conceptually from its duty to indemnify, *i.e.*, its obligation to pay a judgment."  *Walk v. Harford Cas. Ins. Co.*, 382 Md. 1, 15, 852 A.2d 98, 106 (2004).  An "insurance company has a duty to defend its insured for all claims that are *potentially* covered under the policy."  *Id.* (emphasis added); *see Maryland Casualty Co. v. Blackstone Intern. Ltd.*, 442 Md. 685, 695, 114 A.3d 676, 682 (2015); *Brohawn v. Transamerica*

*Ins. Co.*, 276 Md. 396, 408, 347 A.2d 842, 850 (1975).  Indeed, the insurer is obligated to defend an insured if "the underlying tort suit . . . *allege*[*s*] action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be."  *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 643, 679 A.2d 540, 544 (1996) (emphasis in original); *see Cochran*, 337 Md. at 102–03, 651 A.2d at 861; *Brohawn.*, 276 Md. at 407–08, 347 A.2d at 850.  Put another way, "'[e]ven if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, **the insurer still must defend if there is a potentiality that the claim could be covered by the policy**.'"  *Maryland Casualty Co.*, 442 Md. At 695, 114 A.3d at 682 (bold face in *Maryland Casualty Co.*) (quoting *Brohawn*, 276 Md. at 408, 347 A.2d at 850).

In contrast, the duty to indemnify is triggered only if the insured's established liability is *actually* covered under the policy.  In other words, "the duty to defend depends only upon the facts as alleged" in a tort suit, whereas "the duty to indemnify depends upon liability," so "the duty to defend is broader than the duty to indemnify."  *Walk*, 382 Md. at 15, 842 A.2d at 106.  But, as noted, no suit has yet been filed against plaintiffs.

Determining whether an insurer has a duty to defend is a two-step process.  In particular, there are two categories of questions:

> "(1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy's coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses on the allegations of the tort suit. At times these two questions involve separate and distinct matters, and at other times they are intertwined, perhaps involving an identical issue."

*Cap. City Real Est., LLC v. Certain Underwriters at Lloyd's London, Subscribing to Pol'y Number: ARTE018240*, 788 F.3d 375, 379 (4th Cir. 2015) (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282, 285 (1981)); *see also Gemini Ins. Co. v. Earth Treks,*

*Inc.*, 728 F. App'x 182, 184–85 (4th Cir. 2018); *Maryland Cas. Co.*, 442 Md. at 696, 114 A.3d at 682.

The burden is on the insured to prove "entitlement to insurance benefits . . . ."  *HSK v. Provident Life & Accident Ins*., 128 F. Supp. 3d 874, 882 (D. Md. 2015).  Certainly, "an insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer." *Moscarillo v. Prof'l Risk Mgmt. Servs., Inc.*, 398 Md. 529, 541, 921 A.2d 245, 252 (2007) (quoting *Aetna Casualty & Surety Co. v. Cochran*, 337 Md. 97, 112, 651 A.2d 859, 866 (1995)).  But, "any doubt as to whether there is a duty to defend . . . is resolved in favor of the insured."  *Walk*, 382 Md. at 16, 852 A.2d at 106–07.

I focus here on the threshold matter of duty to defend.  The question is whether the duty to defend is ripe, so as to satisfy Article III's case or controversy requirement.  *See MedImmune,* 549 U.S. at 127.

In *Trustgard Ins. Co.,* 942 F.3d at 201, which concerned the duty to indemnify, the Fourth Circuit cautioned against the issuance of an advisory opinion in response to a declaratory judgment action in an insurance case.  Although the Court "recognize[d] how valuable it might be for the parties to know an insurer's obligations before liability is resolved, practical value cannot overcome this fundamental limitation on [ ] jurisdiction." *Id.*  But, when "a state court case is filed and an insured claims a defense, that claim – the duty-to-defend claim – becomes a concrete question, ripe for resolution by a federal court."  *Liberty Mut. Fire Ins. Co. v. Sutton*, 2022 WL 11112589, at *4 (4th Cir. Oct. 19, 2022) (per curiam).

Several district courts in the Fourth Circuit have defined the filing of an underlying lawsuit as the measuring point for when the duty to defend becomes ripe.  *See Trisura Specialty Ins. Co. v. Brian Omps Towing & Repair*, LLC, No. 5:24-CV-00002, 2025 WL 1128829, at *4 (W.D. Va.

Apr. 16, 2025) ("[B]ecause Trisura brought this declaratory action after Omps filed its state-court complaint and has defended CSI in that litigation under a reservation of rights, the duty-to-defend question is ripe for resolution); *Smallwood v. Builders Mut. Ins. Co*., No. 3:23CV67 (RCY), 2024 WL 844868, at *7 (E.D. Va. Feb. 28, 2024) ("Given the very existence of the state and federal court proceedings in this matter, it is clear that the duty-to-defend claim has ripened"); *Allstate Prop. & Cas. Ins. Co. v. Soto*, No. 7:22-CV-00696-TMC, 2023 WL 11891229 (D.S.C. Aug. 28, 2023) ("The question of whether an insurer has a duty to defend an insured is ripe upon the filing of an underlying complaint containing factual allegations that potentially come within the terms of the policy."); *Union Ins. Co. v. Soleil Grp., Inc.*, 465 F. Supp. 2d 567, 574 (D.S.C. 2006) (concluding that "this court is not aware of any binding precedent finding a justiciable controversy regarding an insurer's duty to indemnify or defend prior to the commencement of an underlying action").  Even after a third-party action had been filed, until the insurer makes a final decision regarding a duty to defend, "a ruling would be premature and therefore tantamount to an advisory opinion in contravention of Article III."  *Hanover Ins. Co. v. C. David Venture Mgmt., LLC*, No. 121CV790RDAJFA, 2022 WL 3924264 (E.D. Va. Aug. 30, 2022).

Following the Fourth Circuit's words of caution in *Trustgard,* 942 F.3d at 195*,* district courts have dismissed cases as unripe where plaintiffs sought declaratory judgments on the duty to defend before the related underlying suits were filed.  In *Nationwide Ins. Co. of Am. v. Seward*, No. 2:22-CV-316, 2024 WL 1889831, at *2 (E.D. Va. Apr. 30, 2024)*,* the court found the duty to defend unripe because "there is no underlying complaint because there is no pending action by a third party."  The court stated that although the plaintiff "views any *potential* legal claim as a claim itself, that is not the standard this Court must apply."  *Id.* (emphasis in original).

Similarly, in *Progressive Northern Insurance Company v. Atkinson*, No. 4:18-CV-03063-SAL, 2020 WL 6498886 (D.S.C. Sept. 30, 2020), the district court dismissed a duty to defend declaratory judgment action.  It reasoned that "rendering of an opinion prior to a case taking on a 'fixed and final shape' is exactly the type of advisory decision that *Trustgard* seeks to avoid." *Id.* at *5 (cleaned up), *vacated on other grounds and remanded sub nom. Progressive N. Ins. Co. v. Y.E.,* 2022 WL 670871 (4th Cir. Mar. 7, 2022).  The district court explained that if it declared that the insurer had "'no obligation to defend under this policy for any and all claims that arise out of the same course of conduct,' and then [the third party] never files suit and [the insured], as a result, never requests a defense, the court's decision is unquestionably advisory." *Id.*  The ruling was vacated for mootness when the third party filed suit while the appeal was pending. *See Progressive N. Ins. Co.,* 2022 WL 670871, at *1; *see State Farm Fire & Cas. Co. v. Brady*, No. 2:23-CV-00757-DCN, 2023 WL 3948773, at *3 (D.S.C. June 12, 2023) (dismissing case as unripe when the insured had not made a duty to defend claim to the insurer, and an injured third-party had not filed a complaint); *Am. Millennium Ins. Co. v. USA Freight Sols., Inc.*, No. 1:18CV1023, 2020 WL 733839, at *3 (M.D.N.C. Feb. 13, 2020) (dismissing as unripe a duty to defend declaratory judgment action where a third party had not sued and the insured had not sought protection from the insurer).

Here, as noted, plaintiffs assert in their Complaint that Jane Doe has alleged "that she was the subject of multiple torts while present at the business location on or about . . . ." ECF 5 at 1.  Therefore, plaintiffs maintain that "a claim against the Plaintiffs has been asserted by the individual who was conducting business on the Plaintiff's property." *Id.* ¶ 6.  However, and critically, plaintiffs do not allege that they have actually been sued. *See* ECF 5; ECF 16-1.

There is some authority for the proposition that a third party's failure to file an underlying lawsuit is not necessarily a barrier to pursuit of a declaratory judgment action.  In *Firemen's Ins. Co. of Washington, D.C. v. Kline & Son Cement Repair, Inc*., 474 F. Supp. 2d 779, 781 (E.D. Va. 2007), for example, a general liability insurer sought a declaratory judgment that it had no duty to defend or indemnify the insured from a potential personal injury claim by a prospective plaintiff. The court ruled that although the prospective plaintiff had "not filed suit, she has nonetheless asserted a claim against both [the insured and its owner] sufficient to create a justiciable 'case or controversy' that this Court may resolve under the Declaratory Judgment Act." *Id.* at 786.  The court pointed to the testimony from the potential claimant at a deposition, detailing her claim and her willingness to pursue it.  *Id.*

In *Icarom, PLC v. Howard Cnty,* 904 F. Supp. 454 (D. Md. 1995), an insurance company, Icarom, sought a declaration that it had no duty to defend the insured, Howard County, which was facing potential litigation.  *Id.*  Although no underlying suit had been filed related to the claims for which Icarom sought a declaration, other parties had filed complaints against Howard County on the same set of facts as the threatened lawsuit.  *Id.* at 458.  On this basis, the *Icarom* Court found that the record was sufficient to support "the conclusion that the parties' dispute amounts to a justiciable controversy." *Id.* at 457–458.

However, these cases long predate the Fourth Circuit's 2019 decision in *Trustgard Ins. Co.* Moreover, they are decisions of district courts and are not precedential.

In any event, in these and other cases where ripeness was found despite the absence of a suit having been filed against the insured, there was a well developed factual record and suit was clearly imminent.  *See Colony Ins. Co. v. Hucks Pool Co., Inc.*, No. 4:17-CV-02014-RBH, 2018 WL 902295, at *3 (D.S.C. Feb. 15, 2018) (concluding that a case or controversy existed because

a lawsuit against the insured was imminent); *T.H.E. Ins. Co. v. Dowdy's Amusement Park*, 820 F. Supp. 238 (E.D.N.C. 1993) (finding jurisdiction where the cause of action was clear and a detailed demand letter had been sent to the insurer detailing the complaint and asserting an intent to file suit). Examining this issue in *Columbian Financial Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1384 (10th Cir. 2011), the Tenth Circuit said that "the *sine qua non* is an identifiable specific claim that has risen above the horizon."

*Progressive N. Ins. Co. v. Chambers*, No. 2:19-CV-02684-DCN, 2020 WL 59608, at *1 (D.S.C. Jan. 6, 2020), is informative. There, an injured third party filed a demand for payment with the insurer, Progressive, after being shot by the insured. Progressive filed a declaratory judgment action to establish that it had no duty to defend or indemnify the insured. *Id.* The district court dismissed Progressive's suit, stating that "the issue of whether Progressive owes [the insured] a duty to defend is not ripe because [the injured third party] has not filed suit against [the insured], meaning [the insured] is not in need of a defense." *Id.* at *3. The court reasoned that if five months had passed since the delivery of the demand letter and the injured third party had not filed suit, the lawsuit from which the insured "may need defense is not imminent and that there is not 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (internal citation omitted).

Courts in other circuits have reached similar conclusions. *See Travelers Prop. Cas. Co. of Am. v. H.D. Fowler Co.*, No. C19-1050-JCC, 2020 WL 3971398 (W.D. Wash. July 14, 2020) (dismissing a duty to defend declaratory judgment action, reasoning that "[n]o such controversy exists here because [the insured] has not been sued, it is unclear if [the insured] will be sued, and it is uncertain what a lawsuit against [the insured] might entail."); *see also AMCO Ins. Co. v. W. Drug, Inc.*, No. CV088065PHXNVW, 2008 WL 4368929 (D. Ariz. Sept. 24, 2008) (dismissing a

declaratory judgment action based on a year-old demand letter, explaining that "the facts of the claim against the insured are not sufficiently clear and may change by the time suit is filed.").

Even assuming that the failure of Jane Doe to file suit is not dispositive, the record here is devoid of facts that would support imminence.  As noted, the incident here allegedly occurred in September 2024.  ECF 10 at 1.  Through counsel, Doe, the injured party, sent a demand letter to plaintiffs in March 2025.  ECF 13-1 at 1.  But, to date, more than six months later, there is no indication that a lawsuit has been filed.  *See* Docket.[4]  On this record, a threatened lawsuit that would implicate the duty to defend is not imminent.  A declaratory judgment cannot "'rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Scoggins*, 718 F.3d at 270 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Applying the two-step process outlined by the Fourth Circuit in *Capital City*, 788 F.3d at 379, a court must first determine the coverage and defenses under the terms and requirements of the insurance contract and then ask if the allegations in the tort action potentially bring the tort claim within the policy's coverage.  *Id*.  But, the Complaint does not refer to a specific insurance policy.  It merely states: "Erie issued several policies of insurance to David McMillan and Harford Custom Coach, a company in which McMillan is an officer."  ECF 5 at 1.  The plaintiffs' description of coverage is similarly non-specific.  They assert that "the policies covered many causes of action, including general liability, workers' compensation, as well as other matters, including an umbrella policy."  *Id* at 1.  In the absence of an identified insurance policy, or its terms, the first step of the analysis demanded by *Capital City,* 88 F.3d at 379, is untenable.

---

[4] Undoubtedly, plaintiffs are hoping to avoid the filing of a law suit by the Claimant, and its attendant publicity.

The second step of the *Capital City* test requires allegations that enable a court to determine whether the claim is within the policy's coverage. *Id.* This analysis cannot occur without having a complaint or an allegation of an underlying cause of action to compare against the coverage.

Moreover, Erie points out that its denial is preliminary; it will make a final review when plaintiffs tender a lawsuit for review. ECF 4-1 at 3, 6. As Erie notes, "if they do file suit, they may include covered allegations that trigger a duty to defend. Or they may not." *Id.* at 6.

As mentioned, plaintiffs posit that "if there is coverage, negotiation should be undertaken by Erie Insurance Company, because the money is Erie's to offer." ECF 16-1 at 2. This is a business decision for Erie to make.[5] But, this does not create a duty to defend.

"[A]n insurer's duty to defend is triggered when an examination of the policy, the complaint and appropriate extrinsic evidence discloses a potentiality of coverage under an insurance policy." *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 146, 656 A.2d 779 (1995). "Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used to establish a potentiality of coverage under an insurance policy.'" *Moscarillo*, 398 Md. at 554, 921 A.2d at 252 (ruling that there was no evidence that the underlying suit intended to assert negligence claims that would trigger an insurance policy's duty to defend).

### IV. Conclusion

It has been about a year since the alleged incident, ECF 5 at 3, and almost six months since the Claimant sent the demand letter to plaintiffs. ECF 13-1. To my knowledge, no law suit has yet

---

[5] To be sure, it could be that Erie would avoid litigation costs by early intervention. But, that is a decision to be made by the insurer, not the policy holder.

been filed.  ECF 4-1; *see* Docket.  If I were to rule on this matter as it currently stands, a declaratory judgment as to the duty to defend would constitute an impermissible advisory opinion.

Because the duty to defend is broader than the duty to indemnify, and because Erie's duty to defend is not ripe, it follows that Erie's duty to indemnify is also not ripe. Opinions about the duty to indemnify "would ordinarily be advisory when the insured's liability remains undetermined." *Trustgard*, 942 F.3d at 200; *see A/S J. Ludwig Mowinckles Rederi v. Tidewater Const. Co.*, 559 F.2d at 931 (refusing to decide the duty to indemnify question because it was unripe until liability was determined); *Ellett Bros. v. U.S. Fid. & Guar. Co*., 275 F.3d 384, 388 (4th Cir. 2001) (affirming dismissal of declaratory judgment for the duty to indemnify as unripe because no findings of fact have been made).

For the foregoing reasons, I shall grant the Motion (ECF 4) and dismiss the case, without prejudice.  And, I shall deny the Remand Motion, as moot.

An Order follows.


Date:    October 28, 2025                                    _____/s/_____
                                                            Ellen Lipton Hollander
                                                            United States District Judge